NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12134

COMMONWEALTH  vs.  BRUNO PINTO.


Suffolk.     November 9, 2016. - January 23, 2017.

Present:  Gants, C.J., Botsford, Lenk, Hines, Gaziano, Lowy, &
Budd, JJ.


Firearms.  Constitutional Law, Search and seizure, Investigatory
    stop, Reasonable suspicion.  Search and Seizure, Motor
    vehicle, Reasonable suspicion, Threshold police inquiry.
    Threshold Police Inquiry.



Complaints received and sworn to in the Central Division of
the Boston Municipal Court Department on April 25, 2013, and
June 6, 2013.

A pretrial motion to suppress evidence was heard by Eleanor
C. Sinnott, J., and the cases were tried before her.

The Supreme Judicial Court granted an application for
direct appellate review.


Rebecca Kiley, Committee for Public Counsel Services, for
the defendant.
Amanda Teo, Assistant District Attorney, for the
Commonwealth.


LOWY, J.  A jury convicted the defendant, Bruno Pinto, on

two counts of unlawful possession of a loaded firearm, G. L.

c. 269, § 10 (n), and one count of possession of a firearm without a license, G. L. c. 269, § 10 (a).[1,2]

The defendant's sole argument on appeal is that the search of his vehicle was illegal because the Commonwealth failed to demonstrate the police had reasonable suspicion to conduct an investigatory stop. We agree, and therefore, we reverse the convictions and the order denying the motion to suppress the fruits of that search.

1. Background. We summarize the facts found by the motion judge, supplemented by uncontested testimony from the suppression hearing. Commonwealth v. Johnson, 461 Mass. 44, 45-46 (2011).

a. The stop. While on uniformed patrol in the South Boston section of Boston, Officers Kluziak and Fonseca of the Boston police department received a radio broadcast informing them to be on the lookout for a white Infiniti motor vehicle

---

[1] He was also convicted of possession of ammunition without a firearms identification (FID) card, G. L. c. 269, § 10 (h). That conviction was set aside at the request of the Commonwealth.

[2] The defendant was also charged with assault and battery, G. L. c. 265, § 13A; and malicious destruction of property valued over $250, G. L. c. 266, § 127. The Commonwealth nol prossed these charges. The defendant also received a civil citation for failing to have his motor vehicle inspected, G. L. c. 90, §§ 7A, 7V; he was found not responsible.

with Massachusetts license plate number "FF720."[3]  According to the broadcast, someone connected with the vehicle was wanted for an alleged domestic assault and battery.  The broadcast also advised that the person might be in possession of two firearms and might be heading towards his mother's house on Orton Marotta Way.

Approximately two hours after the broadcast, the officers encountered a white Infiniti with license plate number "FF720" in the area of Orton Marotta Way and stopped it on St. Casimir Street.  Kluziak ordered both individuals in the vehicle to place their hands in view for safety reasons.  Both the defendant, who was the driver, and the passenger complied.  The defendant initially put his hands on the steering wheel, but then he moved his left hand downward so that Kluziak could not see it.  As a result, Kluziak ordered the defendant to get out of the vehicle.

Once the defendant was out of the vehicle, Kluziak conducted a patfrisk of him, which revealed no weapon.  The officer then conducted a search of the immediate area where the defendant had been sitting in the vehicle and found a firearm beneath the driver's seat.  The defendant was placed under arrest, and the police conducted an inventory search of the

---

[3] The original broadcast only stated that the license plate began with "FF," but the officers received the complete number before encountering the defendant.

defendant's entire vehicle.  More incriminating evidence was discovered during this search.

b.  The motion hearing.  Kluziak, the only witness at the suppression hearing, initially testified that he believed that the radio broadcast occurred after the alleged victim of the alleged domestic assault mentioned in the broadcast had come into a police station and reported the information.  The motion judge, crediting this testimony, made oral findings that the alleged victim had come into the station.  Immediately after the judge concluded her findings, defense counsel requested clarification because he did not "believe there was ever any testimony that someone came into a police station."  The judge then asked Kluziak, who was still in the court room, whether he had testified that the victim had come into the police station. Kluziak initially responded that he did not believe he had so testified and that he was unaware how the crime was reported. When pressed by the judge further, he gave an equivocal answer.

In response, the judge decided to "strike all of the findings, regarding the two individuals that came to the station or that [a domestic assault and battery] was reported that way." The judge acknowledged that the lack of information regarding the reason for the radio broadcast weakened the Commonwealth's case, but nevertheless found that there was reasonable suspicion for the stop because the police independently corroborated the

broadcast's prediction that the vehicle would be heading in the direction of the defendant's mother's house on Orton Marotta Way. The judge accordingly denied the motion to suppress.

2. Discussion. When reviewing the denial of a motion to suppress, this court accepts "the judge's subsidiary findings of fact absent clear error and leave[s] to the judge the responsibility of determining the weight and credibility to be given oral testimony presented at the motion hearing." Commonwealth v. Contos, 435 Mass. 19, 32 (2001), quoting Commonwealth v. Eckert, 431 Mass. 591, 592-593 (2000). "We conduct an independent review of the judge's application of constitutional principles to the facts found." Commonwealth v. Hoose, 467 Mass. 395, 400 (2014). With the exception of the finding that the vehicle was heading in the direction of the defendant's mother's house, discussed infra, we accept the motion judge's findings of fact as supported by the record, including her decision to strike all testimony related to how the domestic assault and battery was reported to the police.

An investigatory stop is only justified if the police have reasonable suspicion to conduct the stop. Commonwealth v. Phillips, 452 Mass. 617, 626 (2008). Reasonable suspicion exists when an officer, based on specific, articulable facts and reasonable inferences therefrom, in light of the officer's experience, has reasonable grounds to suspect "a person is

committing, has committed, or is about to commit a crime" (citation omitted).  Commonwealth v. Gomes, 453 Mass. 506, 511 (2009).

This court has recognized that police officers can and do "rely on flyers, bulletins, or radio information coming from dispatchers and fellow officers in conducting a threshold inquiry of a suspect."  Commonwealth v. Riggieri, 438 Mass. 613, 616 (2003).  "When, as here, a police radio broadcast directs officers to make an investigatory stop of a motor vehicle, the stop is lawful only if the Commonwealth establishes both the indicia of reliability of the transmitted information and the particularity of the description of the motor vehicle." Commonwealth v. Lopes, 455 Mass. 147, 155 (2009).  Here, the broadcast contained sufficient particularity regarding the vehicle, identifying its color and make, as well as the license plate number.  See Commonwealth v. Anderson, 461 Mass. 616, 622 (2012).

"To establish that the transmitted information bears adequate indicia of reliability, the Commonwealth must show the basis of knowledge of the source of the information (the basis of knowledge test) and the underlying circumstances demonstrating that the source of the information was credible or the information reliable (veracity test)."  Lopes, 455 Mass. at 155-156.  See Commonwealth v. Upton, 394 Mass. 363, 374-375

(1985).  "Because the standard is reasonable suspicion rather than probable cause, a less rigorous showing in each of these areas is permissible."  Commonwealth v. Depina, 456 Mass. 238, 243 (2010), quoting Commonwealth v. Lyons, 409 Mass. 16, 19 (1990).  Although independent police corroboration may "make up for deficiencies in one or both of these factors" (citation omitted), Depina, supra, "each element of the test must be separately considered and satisfied or supplemented in some way."  Upton, 394 Mass. at 376.

Here, the Commonwealth satisfied neither the basis of knowledge test nor the veracity test, and there was not sufficient independent corroboration of the information in the broadcast concerning a crime having been committed after the judge struck the source of the radio broadcast from her findings.

As to the basis of knowledge, there was no evidence indicating how the individual responsible for the radio broadcast came to have the information about the defendant's whereabouts.  See Commonwealth v. Fraser, 410 Mass. 541, 546 (1991).  The radio broadcast itself did not contain any details that would suggest that the person providing the information had firsthand knowledge of the alleged domestic incident.  Cf. Depina, 456 Mass. at 243 (holding basis of knowledge test

satisfied where dispatch was based on caller's indication that she personally heard gunshots and saw suspect flee).

The Commonwealth similarly failed to establish the veracity of the radio broadcast. To satisfy the veracity test, the Commonwealth needs to show the source of information had either a demonstrated history of reliability, Commonwealth v. Mubdi, 456 Mass. 385, 396-397 (2010), or the existence of "circumstances assuring trustworthiness on the particular occasion of the information's being furnished," 2 W.R. LaFave, Search & Seizure § 3.3(c) (5th ed. 2012). See Anderson, 461 Mass. at 625.

Here, the record contained no evidence of the source providing the information, so there could be "no evidence regarding the [source's] past reliability or reputation for honesty." Anderson, 461 Mass. at 622. See Depina, 456 Mass. at 243-244. Nor did the radio broadcast itself provide any indications of its veracity. See Anderson, 461 Mass. at 624-625 (holding veracity test may be satisfied where anonymous caller makes statements "comparable to an excited utterance"). In the present case, the content of the radio broadcast was devoid of any detail as to whether the information came from a declarant in an excited state, whether it came from a percipient witness to the abuse, or whether it bore any other similar indications of trustworthiness.

Finally, the police did not provide adequate independent corroboration to remedy the deficiencies under either test. The only police corroboration was that the defendant was in the general vicinity of Orton Marotta Way and driving a vehicle that matched the description given over the radio. The motion judge's conclusion that the radio broadcast was corroborated by the fact that the vehicle was near the house of the defendant's mother is not supported by the record. To the contrary, no evidence was presented that the police had information independent of the radio broadcast that the mother lived on Orton Marotta Way.

Corroboration of purely innocent details that are observable by any bystander, such as the description of a vehicle and its location, provides only limited enhancement to the reasonable suspicion determination. See Mubdi, 456 Mass. at 397-398; Lyons, 409 Mass. at 20-21. Since the motion judge's findings were devoid of the source of any information in the radio broadcast, police observation of the defendant's vehicle in the general area as predicted was not enough independent corroboration to meet the reasonable suspicion standard.

Conclusion. The judgments of conviction are reversed and the verdicts are set aside. The order denying the motion to suppress is reversed, and the case is remanded to the Boston

Municipal Court Department for further proceedings consistent with this opinion.

So ordered.