AGNES, J.
*349 After a jury-waived trial, the defendant, Erickson Resende, was convicted of unlawful possession of a firearm, G. L. c. 269, § 10 (a ) ; unlawful possession of a large capacity firearm, G. L. c. 269, § 10 (m ) ; and unlawful possession of a loaded firearm, G. L. c. 269, § 10 (n ). The judge vacated the conviction of possession of a firearm, G. L. c. 269, § 10 (a ), as a lesser included offense of possession of a large capacity firearm, G. L. c. 269, § 10 (m ).
On appeal, the defendant argues that his motion to suppress the firearm was erroneously denied because the police did not have reasonable suspicion to conduct the investigatory stop that resulted in his arrest. The defendant further argues that insufficient evidence was admitted to prove that he knew the firearm was loaded, or that he knew the firearm was a large capacity firearm.
We conclude that the investigatory stop was justified under the reasonable suspicion standard. We also conclude that the evidence presented to prove that the defendant knew the firearm was loaded was sufficient based on the interpretation of G. L. c. 269, § 10 (n ), set forth in Commonwealth v. Brown, 479 Mass. 600, 97 N.E.3d 349 (2018), decided while this appeal was pending. However, because the record indicates that the judge did not correctly instruct himself on the law with regard to this charge, the conviction under § 10 (n ) must be vacated. Finally, we conclude that the evidence presented to prove that the defendant knew the firearm was a large capacity firearm was insufficient based on the interpretation of G. L. c. 269, § 10 (m ), set forth in Commonwealth v. Cassidy, 479 Mass. 527, 96 N.E.3d 691 (2018), also decided while this appeal was pending. However, because the judge vacated the defendant's conviction for possession of a firearm under G. L. c. 269, § 10 (a ), solely because it was a lesser included offense of possession of a large capacity firearm under G. L. c. 269, § 10 (m ), we order the former conviction reinstated.
Background. 1. Suppression hearing. The judge found the following facts, which we supplement with additional facts based on the testimony of the only witness, Officer David Delehoy, whose testimony was implicitly credited by the judge. See Commonwealth v. Isaiah I., 448 Mass. 334, 337, 861 N.E.2d 404 (2007), S.C., 450 Mass. 818, 882 N.E.2d 328 (2008).
At approximately 8 P.M. on October 25, 2013,[1] the Brockton police department received a 911 call relaying a potential incident of domestic violence. The caller identified himself as "Edwin" and provided his address, 139 Colonel Bell Drive, and telephone number. He stated that an individual outside was yelling for his girl friend and issuing unspecified threats, and that the individual had mentioned a "gun." The caller described the individual as a light-skinned black male wearing a green jacket and riding a bicycle.
Officer Delehoy, along with other members of the Brockton police department, responded to the area of 139 Colonel Bell Drive. Officer Delehoy was in uniform and driving a marked police cruiser. He characterized the location as a "hot spot" of violent crime and illegal activity. Upon arriving on Colonel Bell Drive, Officer Delehoy saw a light-skinned black male, later identified as the defendant, wearing a green jacket and walking through some trees toward a bicycle lying on the ground.
*350 There were no other pedestrians or bicyclists in the immediate vicinity.
Officer Delehoy stopped his cruiser and approached the defendant. He asked whether the bicycle was owned by the defendant, and the defendant replied that it was. Officer Delehoy told the defendant to remove his hands from his pockets, and the defendant complied. Officer Delehoy then described the incident that prompted the police to respond to the area. The defendant stated that he did not hear anyone yelling and indicated that he had been speaking with his friend, "Scott." The defendant complied with Officer Delehoy's request that he produce his identification. Officer Delehoy then asked the defendant whether he had any weapons on him. In response, the defendant put his head down, lifted his jacket, and exposed the grip end of a firearm that was located in his waistband. At that point, Officer Delehoy grabbed the defendant's wrists and both parties fell into a bush. Another officer pulled the firearm from the defendant's waistband. The defendant was arrested after he failed to produce a valid license to carry the firearm.
After the defendant's arrest, Officer Delehoy was unable to locate the individual who made the 911 call. He testified that the telephone number provided by the caller did not take incoming calls and no one at the address he provided "would admit to being the person who called."
2. Trial. During trial, Officer Delehoy's testimony describing the stop of the defendant was consistent with his testimony during the suppression hearing, except that he did not characterize the location in any particular way. The trial evidence established the following facts. See Commonwealth v. Latimore, 378 Mass. 671, 676-677, 393 N.E.2d 370 (1979). Officer Delehoy informed the defendant that the police responded to that location because "somebody was yelling and they made mention of a gun."[2] After the defendant had been arrested, Officer Delehoy removed the magazine from the firearm and inspected the firearm to ensure that it did not contain a chambered round. The magazine contained fourteen rounds of ammunition and was capable of holding up to fifteen rounds of ammunition. At the time the firearm was removed from the defendant's waistband, the ammunition inside the magazine was not visible and only became visible when Officer Delehoy removed the magazine from the firearm. No shell casings were observed in the area where the defendant was arrested, and the defendant made no statement indicating he knew that the firearm was loaded or that it was a large capacity firearm. The defendant did not have any loose rounds of ammunition on his person. During booking, the defendant stated that "a guy" gave him the firearm because the defendant "likes guns." Photographs of the firearm, the magazine, and the fourteen rounds of ammunition was received in evidence; photocopies of these photographs are in the materials before us.
Discussion. 1. Investigatory stop. The defendant argues that the motion judge improperly denied his motion to suppress because Officer Delehoy lacked reasonable suspicion to conduct an investigatory stop. We disagree.
In reviewing the denial of a motion to suppress, we accept the motion judge's subsidiary findings of fact, absent clear error, but independently review his ultimate findings and conclusions of law.
*351 Commonwealth v. Scott, 440 Mass. 642, 646, 801 N.E.2d 233 (2004).
"An investigatory stop is justified only if the police have reasonable suspicion to conduct the stop." Commonwealth v. Pinto, 476 Mass. 361, 363, 67 N.E.3d 713 (2017). "Reasonable suspicion exists when an officer, based on specific, articulable facts and reasonable inferences therefrom, in light of the officer's experience, has reasonable grounds to suspect 'a person is committing, has committed, or is about to commit a crime' (citation omitted)." Id. at 363-364, 67 N.E.3d 713, quoting Commonwealth v. Gomes, 453 Mass. 506, 511, 903 N.E.2d 567 (2009). Where an investigatory stop is based on information provided by a 911 caller, the judge must determine that the caller's basis of knowledge and veracity were sufficiently established in order to conclude that the police had reasonable suspicion of criminal activity. See Commonwealth v. Depiero, 473 Mass. 450, 454, 42 N.E.3d 1123 (2016).
In this instance, the caller's basis of knowledge was sufficiently established because he identified himself as someone living in the area where the incident was taking place, and his description of the suspect and incident taking place, as relayed through Officer Delehoy's testimony and the dispatch log admitted in evidence during the suppression hearing, permitted the judge to infer that the caller was relaying his firsthand observations to the 911 operator. Compare Commonwealth v. Wilson, 441 Mass. 390, 395, 805 N.E.2d 968 (2004).
Our review of whether the caller's veracity was sufficiently established is largely controlled by the guidance supplied by the Supreme Judicial Court in Commonwealth v. Manha, 479 Mass. 44, 46-48, 91 N.E.3d 669 (2018). In Manha, the victim called the police to report that an individual had pointed a firearm at her during a "road rage" incident. Id. at 45, 91 N.E.3d 669. The victim provided a description of the individual and his vehicle. Id. Based on that description, the police subsequently performed an investigatory stop of the defendant's vehicle. Id. The police arrested the defendant after finding a pellet gun during the course of a protective sweep of the vehicle. Id.
On appeal, the Supreme Judicial Court treated the victim as an anonymous 911 caller for the purposes of determining whether the officer had a reasonable suspicion that criminal activity was underway. Id. at 47, 91 N.E.3d 669. The court found that the caller's veracity was established where she was the alleged victim and she stayed on the line after reporting the crime, and thus she was "likely willing to be identified"; the police officer corroborated details provided by the caller, such as the vehicle's description and the driver's race and gender, before stopping the vehicle; and the caller reported a serious crime and present danger involving a firearm. Id. at 47-48, 91 N.E.3d 669.
Here, as the 911 caller provided his name, address, and telephone number when reporting the incident, it was reasonable for the police to conclude that the caller was "willing to be identified."[3] Id. In *352 addition, Officer Delehoy corroborated details provided by the caller prior to the investigatory stop; namely, a light-skinned black male wearing a green jacket and in possession of a bicycle near the address provided by the caller. Finally, the caller reported a domestic violence incident in which a firearm may have been involved. Given the gravity of the crime and the potential danger to the public, "the police would have been remiss had they not conducted an investigative stop." Id. at 48, 91 N.E.3d 669, quoting Commonwealth v. Anderson, 461 Mass. 616, 625, 963 N.E.2d 704, cert. denied, 568 U.S. 946, 133 S.Ct. 433, 184 L.Ed.2d 265 (2012).
Based on the foregoing, the motion judge correctly concluded that Officer Delehoy had reasonable suspicion to seize the defendant for the purposes of conducting an investigatory stop.
2. Sufficiency of the evidence. At the close of the Commonwealth's case, the defendant filed a motion for required findings of not guilty on the charges of possession of a loaded firearm without a license, G. L. c. 269, § 10 (n ), and possession of a large capacity firearm, G. L. c. 269, § 10 (m ). The defendant conceded that there was sufficient evidence that, if credited, would permit a finding that the defendant knowingly possessed a firearm in violation of G. L. c. 269, § 10 (a ). However, the defendant argued that the evidence was not sufficient to prove that he knew the firearm was loaded or that he knew the firearm was a large capacity firearm.
In reviewing the sufficiency of the evidence, the "question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Latimore, 378 Mass. at 677, 393 N.E.2d 370, quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
a. Loaded firearm. Our review of the sufficiency of the evidence for the possession of a loaded firearm conviction is controlled by the Supreme Judicial Court's recent decision in Commonwealth v. Brown, 479 Mass. at 608, 97 N.E.3d 349. In that decision, the court held that the Commonwealth must prove the defendant knew the firearm was loaded with ammunition in order to convict the defendant of possession of a loaded firearm under G. L. c. 269, § 10 (n ). Id.
Based on the evidence in Brown, the court concluded that the Commonwealth had not sustained its burden of proof, as "no rational trier of fact could have found beyond a reasonable doubt that the defendant knew the firearm was loaded." Id. at 609, 97 N.E.3d 349. In Brown, the loaded firearm was found in the console between the two rear seats of a vehicle during an inventory search. Id. at 602, 97 N.E.3d 349. The defendant was the driver, another occupant was seated in the front passenger seat, and a third occupant was seated in one of the rear seats. Id. The defendant acknowledged that he was aware of the firearm, but he claimed it belonged to someone else and he, the defendant, put it in the vehicle intending to dispose of it. Id. at 603, 97 N.E.3d 349. The rear seat passenger said the firearm belonged to her. Id. There was no evidence that would permit someone to know whether the firearm was loaded simply by its appearance. Id. at 608, 97 N.E.3d 349. Because it was impossible to determine from the firearm's appearance whether it was loaded, and the *353 Commonwealth did not present any evidence that would support an inference that the defendant knew the firearm was loaded, the court concluded that the Commonwealth had not sustained its burden of proof. Id. at 608-609, 97 N.E.3d 349.
The circumstantial evidence in the case before us distinguishes this case from Brown. It is settled that in a criminal case, the evidence may be entirely or principally circumstantial. See Commonwealth v. Donovan, 395 Mass. 20, 25, 478 N.E.2d 727 (1985), and cases cited. See, e.g., Commonwealth v. Chery, 36 Mass. App. Ct. 913, 913-914, 628 N.E.2d 27 (1994). Further, the inferences drawn from circumstantial evidence need not be necessary, but instead only reasonable and possible. Commonwealth v. Bennett, 424 Mass. 64, 68, 674 N.E.2d 237 (1997), and cases cited. Moreover, as the Supreme Judicial Court noted in Brown, supra at 608, 97 N.E.3d 349, a defendant's knowledge that a firearm is loaded can be inferred from circumstantial evidence.
While this is a close case, and the fact finder was not required to infer that the defendant was aware that the firearm was loaded, the inference that the defendant knew that the firearm was loaded is reasonable and possible. Unlike the facts in Brown, supra at 602-603, 97 N.E.3d 349, the defendant, in the case before us, was found with the firearm in his waistband. A commonsense inference from that fact alone is that a person would check to see if the firearm was loaded before putting it in his waistband. This rational inference is strengthened by the additional fact that the defendant admitted that he had some familiarity with firearms. In addition, the inference that the defendant was aware the firearm was loaded is strengthened even further by the evidence that the defendant was alone in the nighttime. Finally, the fact finder could have found that moments before the police arrived, the defendant had been threatening someone and made reference to a firearm. These facts, in combination, permit an inference and a finding beyond a reasonable doubt that the defendant was aware that the firearm found in his waistband was loaded.
b. Large capacity firearm. Our review of the sufficiency of the evidence for the conviction of possession of a large capacity firearm is similarly controlled by a recent decision of the Supreme Judicial Court. In Commonwealth v. Cassidy, 479 Mass. at 529, 96 N.E.3d 691, the court held that "to sustain a conviction under G. L. c. 269, § 10 (m ), the Commonwealth must prove that a defendant either knew the firearm or feeding device met the legal definition of 'large capacity' or knew it was capable of holding more than ten rounds of ammunition."
In Cassidy, supra, the police executed a search warrant for the defendant's apartment. They found two firearms, four feeding devices, and ammunition. The defendant subsequently was convicted of possession of a large capacity firearm, specifically, a nine millimeter pistol that could hold twelve rounds of ammunition, and possession of four large capacity feeding devices, specifically, one extended magazine for a nine millimeter pistol that could hold fifteen or twenty rounds of ammunition and three magazines for an AK-47-style pistol that each could hold thirty rounds of ammunition. See G. L. c. 269, § 10 (m ). The defendant also was convicted of possession of an assault weapon, specifically, an AK-47-style pistol, G. L. c. 140, § 131M, and possession of ammunition, specifically, several boxes and one bag of ammunition, G. L. c. 269, § 10 (h ).
After explaining that the term "knowingly," as it appears in § 10 (m ), modifies not only the phrase "has in his possession,"
*354 but also the phrase "large capacity weapon," Cassidy, supra at 536, 96 N.E.3d 691, the court concluded that the jury could have inferred that the defendant was aware that the nine millimeter pistol and four magazines were capable of holding more than ten rounds of ammunition because the defendant "had owned the firearms and magazines for a significant period of time," as he had purchased them in 2008 or 2009; had fired the two firearms; was familiar with firearms in general, as he had owned other firearms in the past and hunted with firearms since age eight; had knowledge of the nine millimeter pistol's capacity, as he had indicated that he did not fully load the magazine to avoid wearing out the spring; and could see that the magazines were "noticeably larger" than other magazines and "obvious[ly] large." Id. at 537-538, 96 N.E.3d 691.
Here, by contrast, there is no evidence that the defendant had owned the firearm for a significant period of time. The only evidence as to how he acquired the firearm was the defendant's statement that it was given to him by a friend. Also, unlike in Cassidy, there was only one magazine in this case, and that magazine, which was found inside the firearm, cannot be characterized as "obviously large." Indeed, from the photographs and the testimony, when the magazine was inserted into the firearm, the size of the magazine would not be apparent. Although the defendant indicated that he liked firearms, and it could be inferred that he had some familiarity with firearms, there is no evidence that he knew anything in particular about firearms or magazines. Given the evidence presented, we think the Commonwealth failed to carry its burden of proof on the large capacity firearm charge. Contrast ids="12552919" index="77" url="https://cite.case.law/ne3d/96/691/">id. Accordingly, that conviction must be vacated.
c. Unlawful possession of a firearm. Following sentencing, the judge vacated the defendant's conviction of unlawful possession of a firearm, G. L. c. 269, § 10 (a ), and dismissed that count of the indictment on the ground that it is a lesser included offense of unlawful possession of a large capacity firearm, G. L. c. 269, § 10 (m ). See Commonwealth v. Costa, 65 Mass. App. Ct. 227, 235, 838 N.E.2d 592 (2005). In view of our disposition of the conviction of unlawful possession of a large capacity firearm, G. L. c. 269, § 10 (m ), and the defendant's acknowledgment that the evidence was sufficient to support his conviction of unlawful possession of a firearm, G. L. c. 269, § 10 (a ), we order that conviction reinstated.
3. Instructions on the element of knowledge. "A trial judge sitting without a jury is presumed, absent contrary indication, to have correctly instructed himself as to the manner in which evidence is to be considered in his role as factfinder." Commonwealth v. Batista, 53 Mass. App. Ct. 642, 648 (2002). In the present case, in support of the defendant's motions for required findings of not guilty on the charges under G. L. c. 269, § 10 (m ) and (n ), defense counsel argued that the Commonwealth's burden of proof included proof that the defendant had knowledge that the firearm he possessed was a large capacity firearm ( § 10 [m ] ) and that it was loaded ( § 10 [n ] ). In denying these motions, the judge expressed the view that proof of knowledge, beyond the proof required to establish possession of the firearm, was not required. Although there was no objection, "[b]ecause the judge may have applied a misconception of an essential element of the crime charged, there is a substantial risk that a miscarriage of justice has occurred and the convictions must be reversed. See Wilson v. United States, 250 F.2d 312, 324 (9th Cir. 1957) (no difference between judge incorrectly instructing jury as to applicable law and in effect incorrectly instructing himself - in both cases *355 conviction has resulted from application of improper standard of law)." (Footnote omitted.) Commonwealth v. Gorassi, 432 Mass. 244, 249 (2000).[4] Thus, the conviction of possession of a loaded firearm must be vacated.
Conclusion. Although the evidence presented in support of the charge of possession of a loaded firearm, G. L. c. 269, § 10 (n ), was sufficient to permit the fact finder to infer that the defendant had knowledge that the firearm was loaded, the judge did not instruct himself correctly and therefore that judgment is vacated and the finding of guilt is set a side. Because the evidence presented in support of the charge of possession of a large capacity firearm, G. L. c. 269, § 10 (m ), was insufficient to permit the fact finder to infer that the defendant had knowledge that the firearm was capable of holding more than ten rounds of ammunition, that judgment is vacated, the finding of guilt is set aside, and judgment is to enter for the defendant. Finally, the judgment and the finding of guilt on the charge of unlawful possession of a firearm, G. L. c. 269, § 10 (a ), are reinstated. The case is remanded for further proceedings not inconsistent with this opinion.[5]
So ordered.

The motion judge found that the stop occurred on October 23, 2013, but the testimony given during the suppression hearing indicates that the stop, in fact, took place on October 25, 2013.

There was no objection to this testimony, and thus it was available for the judge, as the fact finder, to consider for its full probative worth. See Commonwealth v. Rivera, 91 Mass. App. Ct. 796, 799-800, 81 N.E.3d 327 (2017).

At the suppression hearing, Officer Delehoy testified that after the defendant's arrest, Delehoy discovered that the telephone number provided by the caller did not receive incoming calls. He also testified that he made an effort to locate the caller, who had identified himself as "Edwin," by going door to door in the neighborhood of the address given by the caller, but he was unable to locate such a person. We do not regard the failure to locate a 911 caller whose name, address, and telephone number were supplied to the police, in these circumstances, as material to the determination whether the information supplied by that caller was reliable for purposes of a threshold inquiry. See Commonwealth v. Meneus, 476 Mass. 231, 236, 66 N.E.3d 1019 (2017) (reasonable suspicion is based on facts available to officer at moment of stop); Commonwealth v. Mercado, 422 Mass. 367, 369, 663 N.E.2d 243 (1996) (same).

We wish to underscore, however, that the trial judge in this case did not have the benefit of the guidance supplied by the Supreme Judicial Court in Brown, 479 Mass. 600, and Cassidy, 479 Mass. 527, which were decided after the trial in this case.

Because the defendant has fully served the sentence that was imposed on the greater offense, G. L. c. 269, § 10 (m ), resentencing on the lesser included offense, G. L. c. 269, § 10 (a ), must be to time served. See Commonwealth v. Sallop, 472 Mass. 568, 570-571 (2015). Also, in the event that the defendant is again convicted of the charge under G. L. c. 269, § 10 (n ), the sentence imposed will be within the discretion of the sentencing judge, limited by the terms of the statute and the principle forbidding judicial vindictiveness. See Commonwealth v. Hyatt, 419 Mass. 815, 823 (1995).