NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-693                                           Appeals Court

COMMONWEALTH  vs.  AARON POWELL.

No. 22-P-693.

Suffolk.      March 7, 2023. – June 23, 2023.

Present:  Sullivan, Sacks, & Ditkoff, JJ.


Firearms.  Assault and Battery.  Attempt.  Search and Seizure,
    Automobile, Protective frisk, Probable cause.  Motor
    Vehicle, Firearms.  Constitutional Law, Search and seizure,
    Stop and frisk, Probable cause.  Probable Cause.  Practice,
    Criminal, Motion to suppress.



    Indictments found and returned in the Superior Court
Department on December 19, 2019.

    A pretrial motion to suppress evidence was heard by Daniel
J. O'Shea, J. and a conditional plea of guilty was accepted by
Anthony M. Campo, J.


    Suzanne L. Renaud for the defendant.
    Darcy A. Jordan, Assistant District Attorney, for the
Commonwealth.


    SULLIVAN, J.  The defendant, Aaron Powell, was indicted on

one count of assault and battery with a firearm, pursuant to

G. L. c. 265, § 15E; one count of attempted assault and battery

with a firearm, pursuant to G. L. c. 265, § 15F; two counts of unlawful possession of a firearm, pursuant to G. L. c. 269, § 10 (a); two counts of unlawful possession of ammunition, pursuant to G. L. c. 269, § 10 (h); and two counts of unlawfully carrying a loaded firearm, pursuant to G. L. c. 269, § 10 (n).  Following the denial of a motion to suppress, the defendant entered a conditional guilty plea on the charges of assault and battery with a firearm; attempted assault and battery with a firearm; two counts of carrying a firearm without a license, second offense; and two counts of possession of a firearm.[1]  See Commonwealth v. Gomez, 480 Mass. 240, 241 (2018); Mass. R. Crim. P. 12 (b) (6), as appearing in 482 Mass. 1501 (2019).[2]  On appeal, the defendant contends that the police did not have grounds to issue an exit order or conduct a patfrisk, and his motion to suppress was denied in error.  We reverse the order denying the motion to suppress, concluding that the patfrisk was not justified.

---

[1] The charges of possessing ammunition without a license were dismissed at the request of the Commonwealth.

[2] In accordance with Mass. R. Crim. P. 12 (b) (6), "the defendant may [but need not] withdraw the guilty plea . . . on any of the specified charges.  If the defendant withdraws the guilty plea . . . , the judge shall dismiss the . . . indictment on those charges, unless the prosecutor shows good cause to do otherwise."  Here, the parties jointly agreed that "reversal of the ruling" on the motion to suppress "would render the Commonwealth's case not viable on all charges."

Background.  The facts as found by the motion judge, supplemented with the uncontroverted evidence from the record that is in accordance with his ruling, see Commonwealth v. Garner, 490 Mass. 90, 91, 93-94 (2022), are as follows. Detective Joseph Medina and others responded to a call regarding a shooting in the Roxbury section of Boston in the area of Vine and Mt. Pleasant streets around 2:22 P.M. on July 22, 2019. When the police arrived, they found two spent shell casings from a nine millimeter firearm, and met with two victims and a witness.  A witness provided a license plate number to a white sedan that the witness said was involved in the shooting.

Detectives obtained videotape surveillance from a nearby community center and saw a white car "turning onto Vine Street from Dudley towards Mt. Pleasant where the shooting occurred." Shortly after the car turned, the videotape showed both victims running down the street.  The police took still images from the videotape and sent the information collected from their investigation to the Boston Regional Intelligence Center (BRIC). BRIC produced a BOLO (be on the lookout) flyer.  The flyer included a photograph of the car and the license plate.  The text stated: "BOLO[,]" "B2-MV of Interest in Shooting."  The flyer further stated that:

> "Detectives are seeking information on the above pictured MV [motor vehicle], a white 2017 Ford Fusion registered to Kayla Evans.  The occupants were possibly involved in a

shooting that occurred earlier today, 7/22/19, at approximately 2:22 PM. in the area of Mt. Pleasant Ave / Vine St. If encountered, please FIO the occupants and tow the MV to B2. Officers are advised to use caution, as this MV may have ties to Heath St.[3]

Following this, in red ink, the flyer continued: "A suspect is not wanted at this time. If this MV is located, please stop and hold and contact B2 Detectives."

Approximately thirty-four hours later, just after midnight on July 24, 2019, Officer Driscoll (who was not involved in the shooting investigation) was driving home through the South Boston section of Boston after his shift. He saw a white Ford Fusion pull up next to him and recognized the car and license plate from the photograph and description in the BRIC flyer. The car was driven by a woman whom he did not recognize. He could not tell whether the passenger was a man or a woman. He followed the Fusion and alerted a detective, who advised Officer Driscoll to maintain surveillance and await backup.

The Fusion parked outside of a Chinese restaurant. The defendant got out of the car, went into the restaurant, and got back in the car with a bag of food. After backup arrived,[4] the responding officers approached the car, and without further

---

[3] "FIO" refers to a "field interrogation and observation." Commonwealth v. Evelyn, 485 Mass. 691, 700 (2020).

[4] Between seven to ten officers were on the scene.

inquiry ordered the driver and the defendant to get out of the car. Officers immediately conducted a patfrisk of the defendant and found a semiautomatic firearm.

The encounter was captured on two body cameras and the videotapes were admitted in evidence. Officer Driscoll, whom the judge also credited, testified that he stood at a distance and did not see the defendant engage in any furtive movements or make any attempt to evade the officers. The videotapes did not reveal any furtive movements or attempts to evade the police.[5] The occupants got out of the car on command and submitted to the patfrisk.[6]

The judge did not make any findings regarding the identity of the suspects or ties to criminal activity; he had no evidence upon which to make such findings. At the time the exit order and patfrisk were conducted the police had no suspects in the shooting, had no description of any suspect, and there was no evidence that the responding officers knew who the driver or passenger were. No evidence was offered at the suppression hearing to explain the BRIC flyer's reference to Heath Street, a

---

[5] We have reviewed the videotapes de novo. See Commonwealth v. Tremblay, 480 Mass. 645, 656 (2018) ("As the recording is documentary evidence, . . . we may review such evidence de novo.)

[6] The officers who conducted the stop and patfrisk did not testify.

residential street. While this may have been intended as a reference to ties to gang activity (i.e., "ties to Heath St.," see Commonwealth v. Gray, 463 Mass. 731, 733 [2012]) the flyer did not say so; there was no evidence on this point, nor was there evidence connecting the registered owner of the car to criminal activity.

The judge ruled that the exit order was justified because "there were specific and articulable facts creating reasonable suspicion that the Fusion was involved in a recent shooting, and the officers were justified in ordering both occupants out to conduct a threshold inquiry." With respect to the patfrisk, the motion judge recognized that the Commonwealth had the burden to prove that police had a reasonable suspicion that the defendant was armed and dangerous. The motion judge did not make any further factual findings regarding the patfrisk, but ruled that:

> "In this case the Commonwealth has produced a body camera video which clearly depicts the scene of the stop, exit order and patfrisk. After reviewing that video evidence and hearing the credible testimony of the officers involved, the court finds that no constitutional violation of Mr. Powell's rights occurred with regard to the discovery and seizure of the firearm, and the Motion to Suppress must therefore be denied."

Discussion. The defendant challenges both the exit order and the patfrisk. "In reviewing these claims, 'we adopt the motion judge's subsidiary findings of fact absent clear error, but we independently determine the correctness of the judge's

application of constitutional principles to the facts as found.'"  Commonwealth v. Bryan, 98 Mass. App. Ct. 238, 242 (2020), quoting Commonwealth v. Catanzaro, 441 Mass. 46, 50 (2004).

1.  Exit order.  "Our analysis begins with the validity of the exit order because there is no dispute that the initial stop of the . . . vehicle was valid."  Commonwealth v. Monell, 99 Mass. App. Ct. 487, 489 (2021).  "An exit order is justified during a traffic stop where (1) police are warranted in the belief that the safety of the officers or others is threatened; (2) police have reasonable suspicion of criminal activity; or (3) police are conducting a search of the vehicle on other grounds."  Commonwealth v. Torres-Pagan, 484 Mass. 34, 38 (2020).

The Commonwealth maintains that the officers were entitled to issue the exit order based on the first two grounds enumerated in Torres-Pagan, a contention we reject for the reasons discussed in connection with the patfrisk, infra.[7]

---

[7] The second ground requires that there be a showing that the officers had reasonable suspicion that the defendant was engaged in criminal activity.  See Commonwealth v. Cruz, 459 Mass. 459, 466-467 (2011).  There being no information regarding the occupants of the car at the time of the stop, and for the reasons stated in the balance of this opinion regarding the lack of a basis for the patfrisk, we do not rely on either grounds one or two.

Whether the officers had grounds to issue the exit order under the third ground enumerated in Torres-Pagan -- on the basis of probable cause to search the car -- presents a close question. The police had information that the car had been involved in a shooting the day before. The BRIC flyer described the car with particularity. Cf. Commonwealth v. Pinto, 476 Mass. 361, 364 (2017). Detective Medina testified to the circumstances of the shooting the day before and the investigation subsequently conducted which led to the identification of the car. See id., citing Commonwealth v. Lopes, 455 Mass. 147, 155 (2009) (when relying on information in flyer, "Commonwealth must show basis of knowledge of the source of information . . . and underlying circumstances demonstrating source" was credible). The Commonwealth maintains that the officers had a basis to search the car based on probable cause "to believe that evidence [of the shooting] might be found in the [car]." Commonwealth v. Gentile, 437 Mass. 569, 573 (2002).[8] Indeed, "when an automobile is stopped in a public place with probable cause, no more exigent circumstances are required . . . beyond the inherent mobility of an automobile itself to justify a warrantless search

---

[8] The BRIC flyer directed law enforcement to "FIO the occupants and tow the [motor vehicle]". There is no evidence that anything was found in the car, and no challenge has been made to the search of the car on appeal.

of the vehicle." Commonwealth v. Sheridan, 470 Mass. 752, 756 (2015), quoting Commonwealth v. Motta, 424 Mass. 117, 124 (1997). See Commonwealth v. Davis, 481 Mass. 210, 222 (2019), citing Motta, supra at 122-124 (when stopped with probable cause, "police entitled to search areas of vehicle where fruits of crime or evidence of crime might be found"); Commonwealth v. Cast, 407 Mass. 891, 901 (1990) (search of car permissible where there was "probable cause to believe that a motor vehicle on a public way contains contraband or evidence of a crime").

Arguably, there was probable cause to believe that evidence, such as fingerprints, might still be in the car, although this argument was not made to the motion judge.[9] Relying on Commonwealth v. Jordan, 469 Mass. 134, 145-147 (2014), the defendant argues that there was not probable cause to believe that the gun would be found in the car over a day later. However, Jordan is distinguishable in that it involved the stop of a rental vehicle in which the shooter fled. See id. (no probable cause to stop rental car in which shooter fled two days prior where officers had no identifying information about suspects involved or terms of rental agreement and "two days was more than sufficient time to remove a gun from the [rental]

---

[9] Our case law recognizes, on the basis of proffered evidence, that fingerprints may remain for extended periods of time. See Commonwealth v. French, 476 Mass. 1023, 1024 (2017).

vehicle"). At the end of the day, however, we need not decide whether the exit order was valid, as we conclude that the patfrisk was not.

2. Patfrisk. Even if the exit order was based on probable cause to search the car, more was required to conduct a patfrisk of the passenger. "The test for a patfrisk is more stringent than for an exit order." Monell, 99 Mass. App. Ct. at 490. "A patfrisk is permissible only where an officer has reasonable suspicion that the suspect is armed and dangerous." Torres-Pagan, 484 Mass. at 36. Although certitude is not required, "[i]n the case of the self-protective search for weapons, [an officer] must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." Commonwealth v. Sweeting-Bailey, 488 Mass. 741, 746 (2021), quoting Sibron v. New York, 392 U.S. 40, 64 (1968). "[W]e have required that the police officer's action be based on specific and articulable facts and the reasonable inferences which follow from such facts in light of the officer's experience." Sweeting-Bailey, supra, quoting Commonwealth v. Silva, 366 Mass. 402, 406 (1974).

Given the lack of evidence linking the defendant to the report of shots fired, coupled with the amount of time that had passed since the report, and the lack of any other facts that would create a reasonable suspicion that the defendant was

armed, the judge erred in concluding, based on the very limited evidence provided, that the Commonwealth had met its burden to show a reasonable suspicion that the defendant was armed and dangerous. The arresting officers had no suspect and no description of a suspect. Both the registered owner and the driver at the time of the stop were women, but the officers did not know who the driver was, and did not find out before the patfrisk was conducted. The Commonwealth offered no evidence at the hearing to link the registered owner of the car to the driver at the time of the stop, or to link the defendant to criminal activity.[10] The BRIC flyer referred to "ties to Heath St.," a residential street, but no evidence was submitted at the hearing that the reference was meant to describe gang activity, or that the car was tied to gang activity. Cf. Pinto, 476 Mass. at 364 (facts referred to in BOLO must be supported by evidence at hearing); Lopes, 455 Mass. at 155-156 (same).

The fact that the car was used in a shooting did not provide reasonable suspicion that an armed shooter or shooters were still in the car thirty-four hours later. Temporal "[p]roximity is accorded greater probative value in the reasonable suspicion calculus when the distance is short and the

---

[10] We do not mean to suggest that a prior criminal record alone would justify a patfrisk, although it may be a factor. See Garner, 490 Mass. at 93.

timing is close." Commonwealth v. Warren, 475 Mass. 530, 535-536 (2016) (no reasonable suspicion for stop where description vague and general and "[t]he location and timing of the stop were no more than random occurrences"). See Commonwealth v. D.M., 100 Mass. App. Ct. 211, 219 (2021). Compare Commonwealth v. Privette, 491 Mass. 501, 520-521 (2023) (defendant matched description of suspect and was only person on street at 3:43 A.M. in the rain within seven minutes of robbery in location consistent with reported flight path); Evelyn, 485 Mass. at 694-695, 705, 708 (2020) (although no description of suspects, reasonable suspicion to stop where defendant found thirteen minutes after report of shooting and one and one-half miles away and where "he appeared to be holding an object in his right jacket pocket that was consistent with the size of a firearm"). In the absence of a description of suspects, the BRIC flyer, on its own, was inadequate to create a reasonable suspicion that the unidentified passenger in the car was armed and dangerous. Cf. Commonwealth v. Karen K., 491 Mass 165, 176 (2023) ("stale" tip by concerned caller that shots were fired the day before considered to a "minimal extent"); id. at 184 (Budd, C.J. concurring) ("Further, as the court acknowledges, the concerned citizen's tip that resulted in the officers responding to the area contributes little to the reasonable suspicion calculus due

to its staleness and lack of detail").  Cf. Jordan, 469 Mass. at 145-147.

This case is therefore distinguishable from those in which there was greater temporal and geographic proximity and a better description of the suspect(s).  See, e.g., Commonwealth v. Henley, 488 Mass. 95, 105 (2021) (patfrisk warranted where defendant who matched detailed description was found two blocks away from fatal shooting five minutes after radio transmission describing shooter); Commonwealth v. Stoute, 422 Mass. 782, 791 (1996) (patfrisk warranted when officers had eyewitness description of suspects, were in area with numerous reports of firearm crimes, found defendant within moments of receiving report of gun, and defendant sought to evade police); Commonwealth v. Doocey, 56 Mass. App. Ct. 550, 557-558 (2002) (patfrisk warranted where officers had eyewitness description of suspects, there were no other people in area, and officers found defendant minutes after report of shots just fired and in close proximity to location of shots.)[11]

---

[11] Temporal and geographic proximity have served as important factors in assessing reasonable suspicion for a stop, exit order, patfrisk, and probable cause to search under our search and seizure cases.  See, e.g., Evelyn, 485 Mass. at 705 (reasonable suspicion to stop where defendant found thirteen minutes after report of shooting and one and one half miles away, and officers made observations indicating defendant was carrying a concealed weapon); Commonwealth v. Mendez, 476 Mass. 512, 517 (2017) (defendant ran to running car minutes after shooting in same complex and trooper verified that registered

Furthermore, nothing occurred after the stop to create reasonable suspicion that the defendant was armed and dangerous. During the police encounter, the defendant obeyed officer directives and made no suspicious movements. There was no evidence (and consequently no finding) of furtive or evasive behavior. See Commonwealth v. Gomes, 453 Mass. 506, 513 (2009) ("There was no evidence that the defendant made particular gestures or used any body language that would cause the officers to believe that he was carrying a weapon"). By contrast, in Karen K., 491 Mass at 176, the court concluded that a patfrisk was constitutionally permissible because in addition to a stale tip that teenagers had been seen handling a gun outside a housing complex, the defendant was found in that location and exhibited behavior indicative of concealing a weapon. Contrast also Commonwealth v. DePeiza, 449 Mass. 367, 373-374 & n.4 (2007) (defendant's straight arm gait and odd reaching gesture contributed to officers' reasonable fear for their safety);

_____

owner had history of crimes of violence); Commonwealth v. Hernandez, 473 Mass. 379, 385-386 (2015) (probable cause to search the trunk when vehicle matching exact description of the vehicle used in an armed robbery was stopped on reported escape route six hours after reported armed robbery); Lopes, 455 Mass. at 154-161 (Brockton police had reasonable suspicion to stop and search defendant's van two hours after murder in Boston based on description of van provided by broadcast from Boston police); Commonwealth v. Bostock, 450 Mass. 616, 622-625 (2008) (reasonable suspicion to search suspect's truck when suspect who matched description was found minutes after reported theft in vicinity of theft).

Monell, 99 Mass. App. Ct. at 490-491 (facts that defendant "'froze' while acting as if he was trying to conceal his right hand" together with presence of gun holster, time of night, and earlier fatal shooting "sufficient to establish a reasonable suspicion that the defendant was armed and dangerous").  The factors present in these cases are lacking here.

Conclusion.  Absent specific articulable facts tending to establish that this defendant was armed and dangerous, the patfrisk violated constitutional norms.  Accordingly, the order denying the motion to suppress is reversed, and the matter is remanded for further proceedings.  See n.1, supra.

So ordered.