NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-559

COMMONWEALTH

vs.

TIMOTHY L. HURLEY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Timothy Hurley, filed a motion to suppress a firearm and ammunition seized after the police stopped and searched the vehicle he was driving. A judge of the District Court allowed the motion, concluding that the police lacked reasonable suspicion to justify the stop of the vehicle, and the Commonwealth filed this interlocutory appeal. We affirm.

Background. We recite the facts as found by the motion judge. Around midnight on December 20, 2018, an unidentified 911 caller reported that he saw people at the Untold Brewery in Scituate. The caller was unsure if the people were drunk, but said they were driving up and down the street making noise and that he had to work in the morning. We will refer to this call as the "first call." Officer Corey Arseneau of the Scituate

Police Department received a radio call from dispatch to respond to the area of the Untold Brewery for a noise complaint.

The same unidentified caller then called back and provided the license plate number of the motor vehicle. We will refer to this call as the "second call." Dispatch relayed the license plate number of the vehicle over the radio, describing it as a gray 2014 Ford Fusion registered to Lawrence Hurley, born in 1930, of North Easton. Officer Arseneau saw the vehicle parked along the curb of the Untold Brewery and stopped and spoke with the defendant, who was the operator. After investigating, Officer Arseneau did not find any evidence of a noise violation, alcohol consumption, or impairment, and a record check confirmed that the defendant's license was active. Two passengers in the car, Kaylie Guiney and Keon Toney, were both known to the Scituate Police Department for drug use, and Toney was known to carry firearms. Guiney and Toney got out of the defendant's vehicle and told Officer Arseneau that they were going to walk back to Toney's home, located across the street from the brewery on Jenkins Place. The defendant said that he lived in North Easton and that he was also returning home and put an address in his global positioning system (GPS) before leaving the area. No citations were issued, and the defendant left the area without incident.

About one hour later, the same unidentified caller dialed 911 reporting that he was at the train station and that the same vehicle almost hit him and his mother. We will refer to this call as the "third call." The caller told dispatch that the driver may be "on drugs or something." The dispatcher broadcasted that the same anonymous caller had reported that the same vehicle was now lingering in the area of the train station. Officer Edward Gibbons responded that he was at the train station minutes before and had seen the defendant, and that the defendant was not breaking any laws. Officer Arseneau checked the train station parking lot and did not find any vehicle.

The final 911 call, from the same caller, was made at around 1:25 A.M. We will refer to this call as the "fourth call." The caller identified himself as "Matty" on Jenkins Place and complained that the same vehicle was now on Berkshire Road and waking up his family. Matty told dispatch that he would come to the station to lodge a complaint. Dispatch then radioed officers to check for the same vehicle on Berkshire Road and reported that the caller would be coming to the station to file a complaint.

Sergeant Brian McLaughlin and Officer Arseneau arrived at Berkshire Road about the same time and noticed that the defendant's vehicle was legally parked on the side of the road in front of a home. The defendant was in the driver's seat and

3

Guiney was in the backseat. Sergeant McLaughlin pulled his cruiser in front of the defendant's vehicle and Officer Arseneau pulled up behind the defendant's vehicle and activated his blue lights. The defendant stated that they were just waiting for Toney. Sergeant McLaughlin saw drug paraphernalia in plain view, as well as furtive movements by Guiney. As a result, the defendant and passenger were ordered to exit the vehicle, and the vehicle was searched. A loaded firearm and a syringe were discovered in the search and the defendant was placed under arrest.

The defendant moved to suppress the evidence obtained as a result of the stop initiated after the fourth call. At the motion hearing, the Commonwealth called three police officers and played the 911 calls and dispatch recordings, which were also admitted as exhibits. In allowing the motion to suppress, the judge and the parties agreed that the defendant was stopped in a constitutional sense when the officers activated their cruiser lights and boxed in the defendant's car. The judge concluded that the police had not independently witnessed any criminal activity and the stop was not supported by reasonable suspicion. While the police officers had a hunch that criminal activity was afoot, the judge concluded that police lacked specific and articulable facts to support that the defendant had committed, was committing, or was about to commit a crime. The

4

judge noted that the veracity of the unidentified caller was clearly questioned by at least one of the officers before the stop, and that without independent police corroboration that the defendant was committing an offense, the stop was not justified.

Discussion.  Here, we must decide whether the police officers had reasonable suspicion to stop the defendant's car on Berkshire Road.  "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact unless they are clearly erroneous but independently review the judge's ultimate findings and conclusions of law" (citation omitted). Commonwealth v. Depiero, 473 Mass. 450, 453 (2016).  The Commonwealth, as is good practice, played the 911 calls and the dispatch recordings at the motion to suppress hearing and then submitted a copy as an exhibit.  The 911 calls were not transcribed.  Unfortunately, through no fault of the prosecutor, the copy of the 911 calls, which was the only copy, was not located in the file in the District Court.  As a result, the parties and this panel are left to rely on the judge's written findings of fact regarding both the substance of the 911 calls and, importantly in this case, what specific information the dispatcher provided to the police officers over the radio in response to the 911 calls.

An investigatory stop of a motor vehicle is permitted if the police officer has "reasonable suspicion, based upon

5

specific, articulable facts and reasonable inferences therefrom, that an occupant of the . . . motor vehicle had committed, was committing, or was about to commit a crime" (citation omitted). Depiero, 473 Mass. at 453. In making a threshold inquiry, police officers can rely on information provided from "flyers, bulletins, or radio information coming from dispatchers," as well as information from other police officers. Commonwealth v. Pinto, 476 Mass. 361, 364 (2017).

In cases where the radio dispatch directs an officer to make an investigatory stop of a motor vehicle, the Commonwealth must establish both the particularity of the vehicle's description and "indicia of the reliability of the transmitted information." Commonwealth v. Westgate, 101 Mass. App. Ct. 548, 551 (2022). See Commonwealth v. Manha, 479 Mass. 44, 46 (2018). Because the standard is reasonable suspicion and not probable cause, "a less rigorous showing in each of these areas is permissible" (citation omitted). Pinto, 476 Mass. at 364. Reasonable suspicion is an objective standard. Commonwealth v. Staley, 98 Mass. App. Ct. 189, 191 (2020). In determining if reasonable suspicion exists, we assess the totality of the circumstances leading to the stop and consider the facts known to the police officers at the time of the seizure. Commonwealth v. Meneus, 476 Mass. 231, 235 (2017).

6

Before focusing on the stop of the defendant's vehicle on Berkshire Road, we take a moment to consider the backdrop of the two prior encounters that the police officers had with the defendant and what information they knew prior to the stop on Berkshire Road.  The first police encounter was based on the first and second calls by the anonymous caller.  In that first encounter, dispatch informed Officer Arseneau of the crime to be investigated, specifically a noise violation, and provided the license plate number, make and model of the vehicle in question as well as the location of the car.  The constitutionality of the first stop is not at issue on appeal.

In the encounter after the third call, dispatch told officers that the car was lingering at the train station.  While it does not appear that "lingering" at the public train station amounts to a crime, we need not address this issue, as the police did not effectuate a stop of the defendant but rather had an exchange that did not amount to a stop.  See Commonwealth v. Murdough, 428 Mass. 760, 763-764 (1999).

We turn now to the stop of the defendant's motor vehicle at issue, which occurred on Berkshire Road after the fourth call.  Unlike the specific information provided to officers by dispatch after the first call, about a possible crime of disturbing the peace or a noise violation, the information provided to the police officers after the fourth call and prior to the stop of

7

the defendant's car on Berkshire Road is much more limited.  The Commonwealth argues that the stop on Berkshire Road was supported by reasonable suspicion because the unidentified 911 caller reported that the defendant had committed the crimes of a noise violation and negligent operation of a motor vehicle.  In most instances, the Commonwealth's argument would be directly on point if the police officer had, based on an anonymous caller, some information about a specific crime being committed and stopped the vehicle to further inquire.  In that situation, the main issue is the caller's basis of knowledge and veracity.  That is not the issue in this case.  When responding to Berkshire Road, it is only fair to say that the police were responding to a suspicious vehicle that had been in the area for some time and whose passengers were known to the police.

Therefore, despite excellent arguments by both parties on the issue, our decision on appeal is not determined by an analysis of the veracity of the caller during the fourth call.  Rather the determinative inquiry is what specific information the police officers possessed prior to the stop that could support reasonable suspicion that a crime had been, was being, or was about to be committed.  See Commonwealth v. Warren, 475 Mass. 530, 534 (2016).  The unidentified caller reported to dispatch that he and his mother were almost hit by the defendant's vehicle at the train station and later that the same

8

car was continuing to wake him up, possibly by being loud, and was now on Berkshire Road. Based on the detailed findings of fact by the judge, however, it appears that the dispatcher did not communicate to the police any specific information about either the near-vehicular accident or noise, both of which might be possible crimes. Again, the outcome in this case may have been different if we were able to independently review the 911 and dispatch calls.

In regards to the fourth and most recent call, police officers at that time only had actual knowledge that the defendant's car was in the area of Berkshire Road and that the caller would be coming to the station to file a complaint.[1]

---

[1] We note that in the motion to suppress hearing, Officer Gibbons testified that his understanding of why dispatch sent him to Berkshire Road was for a "car parked, or sitting out in the neighborhood between the houses. It's a residential neighborhood." Officer Arseneau testified that he believed he reported to Berkshire Road for the "same suspicious vehicle driving up and down Berkshire at this point." Finally, Sergeant McLaughlin testified that the reason he responded to Berkshire Road was "a citizen[']s complaint originally to Dispatch. I don't know how it came in to them, to our dispatch center, but it was related that it was a suspicious vehicle, could possibly be similar, same vehicle as the other two involvements." Later in his testimony Sergeant McLaughlin stated that the 911 caller believed "there was a racing of -- the high speed of the car which would depict whatever the noise factors that they felt was disturbing." In any event, Sergeant McLaughlin testified that when he arrived at Berkshire Road, the car was not violating any noise ordinance or driving up and down the road but was legally parked on the side. The judge, who had the 911 calls and the dispatch recordings, was not required to find that Sergeant McLaughlin knew of any noise violation at the time he arrived on the scene.

Additionally, the doctrine of collective knowledge does not rectify this shortcoming because the record does not establish that the dispatcher was in a position to direct the officers on the scene to take specific actions, nor did the dispatcher give the officers on the scene any of the critical facts of any potential crimes.  See Commonwealth v. Privette, 491 Mass. 501, 508, 513 (2023) ("[T]he collective knowledge doctrine has evolved into two different types:  horizontal collective knowledge and vertical collective knowledge."  Vertical collective knowledge requires "one officer directing or requesting another officer to conduct a stop, frisk, search, or an arrest."  Horizontal collective knowledge requires officer to "have knowledge of at least some of the critical facts" from another officer involved in joint investigation).

As to the previous calls, they too offer little support. Any support the information of a potential noise complaint in the first call might have offered evaporated after the officers stopped the defendant, investigated, and found no criminal or civil violations.  The stop of the vehicle and ensuing investigation dispelled the claim from the anonymous caller that the car was committing a noise infraction.  The second call contained no information regarding any crime, but only contained identifying information of the defendant's vehicle.  While dispatch might know from the third call that there was potential

10

drug use, for the same reasons as the fourth call we cannot impute that knowledge to the officers on the scene under the collective knowledge doctrine.  See Privette, 491 Mass. at 508, 513.  In relation to the third call, the officers on the scene were only told that the defendant's vehicle was now lingering in the area of the train station, which they quickly confirmed was not true.  Accordingly, prior to seeing the defendant's car on Berkshire Road, the police officers on the scene did not have reasonable suspicion that any crime had been, was being, or was about to be committed.

When police arrived at Berkshire Road, which they had every right to do, they also did not witness any criminal activity. They only saw the defendant's car legally parked in front of a home.  Reasonable suspicion "may not be based on good faith or a hunch, but on specific, articulable facts and inferences that follow from the officer's experience" (citation omitted). Commonwealth v. Quinn, 68 Mass. App. Ct. 476, 480 (2007).  That officers corroborated that the same car was now on Berkshire Road (as reported by dispatch) is not sufficient to amount to reasonable suspicion that a crime was being committed.  See Commonwealth v. Mubdi, 456 Mass. 385, 397-398 (2010) (combination of innocent details does not tip scales in favor of reasonable suspicion).  Here, the lack of information about criminal activity provided to or acquired by police officers

11

responding to the area supports the conclusion made by the judge that the stop was not permissible because it was not based on reasonable suspicion.  Accordingly, we affirm the allowance of the motion to suppress.

Order allowing motion to
  suppress affirmed.

By the Court (Sacks, Singh &
  Walsh, JJ.[2]),

Assistant Clerk

Entered:  May 9, 2024.

---

[2] The panelists are listed in order of seniority.